IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jesse Near, as Personal Representative of the Estate of Douglas Larry Belger, | ) ) ) | C/A No.: 3:23-3483-SAL |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| Enerco Group, Inc., doing business as Mr. Heater, | ) ) ) | ORDER |
| Defendant. | ) ) ) ) | |

Jesse Near ("Plaintiff"), as personal representative of the estate of Douglas Larry Belger ("Decedent"), filed this products liability case against Enerco Group, Inc., doing business as Mr. Heater ("Defendant"). ECF No. 1. This matter is before the court on Defendant's motion for summary judgment, ECF No. 30, as well as its motions to exclude the testimony of Plaintiff's two experts—Nancy Grugle ("Grugle") and David Rondinone ("Rondinone"), ECF Nos. 31, 32. Defendant seeks to exclude their testimony pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrel Dow. Pharm.*, 509 U.S. 579 (1993). Also before the court is Plaintiff's motion to certify a question to the South Carolina Supreme Court. ECF No. 37.

The parties argued these motions on February 14, 2025. For the reasons below, the court now grants Defendant's motion to exclude Grugle, denies Plaintiff's motion for certification, grants Defendant's motion for summary judgment, and denies as moot Plaintiff's motion to exclude Rondinone.

**BACKGROUND AND PROCEDURAL HISTORY**

I.      Decedent's Injuries

On December 27, 2022, Decedent and his nephew, Keith McCullough ("McCullough"),

1

were working in McCullough's workshop repairing Decedent's broken mailbox. ECF No. 39-1 at 5:13–19, 10:1–2, 85:5–86:13. Decedent and McCullough were best friends, and it was common for the two men to spend time together tinkering and fixing things. *Id.* at 9:23–12:6.

It was a particularly cold day—cold enough to freeze the water lines—so McCullough turned on his portable propane tank-top heater ("Subject Heater") while they worked. *Id.* at 90:3–23. An example of the Subject Heater is as follows:



*See* ECF No. 30-1 at 4.

Both men would periodically stand near the Subject Heater to warm themselves. ECF No. 39-1 at 92:8–93:22, 96:3–20. Decedent was wearing a plaid brown shirt, long john undershirt, a jacket that was 100% cotton, and pants that were a blend of 60% cotton, 36% nylon, and 4% elastane. ECF No. 39-2 at 4, ECF No. 39-3 at 11. At some point, McCullough left the workshop to collect wood to demonstrate the performance of his new wood splitter. ECF No. 39-1 at 98:6–22. He was gone approximately 35 to 45 seconds. *Id.* at 103:18–104:8. As McCullough walked back toward the shop, Decedent came running out with his clothing in flames. *Id.* at 103:12–104:8, 110:12–19. While he did not see the event, McCullough speculates Decedent was engulfed in flames because he inadvertently got close, fell, or backed into the Subject Heater, and it ignited

his clothing. *Id.* at 66:7–68:1.[1]

Decedent was taken to the burn center in Augusta where he was treated for a total burn surface area of 13% of his body. ECF No. 39-5 at 1. He underwent surgical debridement and grafting but died while in recovery. *Id.*

II.     Subject Heater

Defendant is responsible for the design, manufacture, and marketing of the "Mr. Heater" propane tank top heater at issue. ECF No. 30-2 ¶ 5. The Subject Heater is an MH15T model, purportedly designed in 2011 and manufactured in 2017. *Id.* ¶¶ 5, 7.

Defendant sells these heaters with numerous warnings and instructions, which are contained on a hangtag attached to the heaters, on their packaging, and in the Operating Instructions and Owner's Manual ("Owner's Manual") that accompanies the heaters. *Id.* ¶16. Defendant provides the following relevant warnings with Model MH15T heaters:

Stamped into the reflector:

"HOT"

On the packaging:

"Read and keep the owner's manual included. Follow all safety requirements and operating instructions."

In the Owner's Manual:

**WARNING: If the information in this manual is not followed exactly, a fire or explosion may result causing property damage, personal injury or loss of life.**

⚠  ONLY PERSONS WHO CAN UNDERSTAND AND FOLLOW THE INSTRUCTIONS SHOULD USE OR SERVICE THIS HEATER.

**WARNING:**
⚠  FIRE, BURN, INHALATION, AND EXPLOSION HAZARD. KEEP

---

[1] Defendant's expert agrees this is the likely ignition scenario. ECF No. 39-4 at 23:3–16, 47:1–20.

SOLID COMBUSTIBLES SUCH AS BUILDING MATERIALS, PAPER OR CARDBOARD, A SAFE DISTANCE AWAY FROM THE HEATER AS RECOMMENDED BY THE INSTRUCTIONS.

 **GENERAL HAZARD WARNING:**
FAILURE TO COMPLY WITH THE PRECAUTIONS AND INSTRUCTIONS PROVIDED WITH THIS HEATER CAN RESULT IN DEATH, SERIOUS BODILY INJURY AND PROPERTY LOSS OR DAMAGE FROM HAZARDS OF FIRE, EXPLOSION, BURN, ASPHYXIATION, CARBON MONOXIDE POISONING AND/OR ELECTRICAL SHOCK.

**WARNING**

⚠ Never touch heater while in operation to avoid injury.

**MINIMUM CLEARANCE FROM COMBUSTIBLE MATERIALS**
A.       When operating, the heater surfaces are extremely hot. Keep sleeping bags, clothing, and all combustible materials clear of the heater by a least the distances shown in figure 4.

| BTU/HR. Rating | | Normal Operating Procedure | Clearances to Combustibles | | | | |
|---|---|---|---|---|---|---|---|
| Model no. | Gas Propane | | From C.L. OF HTR. TO FLOOR | FRONT | SIDES | REAR | CEILING |
| MH15T | 15,000 | Vertical | 24" | 30" | 30" | 30" | 30" |
| MH30T | 30,000 | Vertical | 24" | 30" | 30" | 30" | 30" |

Figure 4.

B.       **WARNING**: To avoid injury or property damage never allow clothing, tents or other combustible material within 30" of the face of the heater. This heater must be located at least 24" above the floor level when in use. Never operate the heater when sleeping.

*Id.*

In addition to what is stamped into the reflector, placed on the packaging and found in the

Owner's Manual, represented above, the product also provides as follows on the hangtag:

⚠ ONLY PERSONS WHO CAN UNDERSTAND AND FOLLOW THE INSTRUCTIONS SHOULD USE OR SERVICE THIS HEATER.

CAUTION: Minimum heater clearances from combustibles [French omitted]: Top and Front–36" (915mm), Side, Rear and Floor–24" (61mm)

4

**WARNING:**

⚠ FIRE, BURN, INHALATION, AND EXPLOSION HAZARD. KEEP SOLID COMBUSTIBLES SUCH AS BUILDING MATERIALS, PAPER OR CARDBOARD, A SAFE DISTANCE AWAY FROM THE HEATER AS RECOMMENDED BY THE INSTRUCTIONS.

⚠ **GENERAL HAZARD WARNING:**
FAILURE TO COMPLY WITH THE PRECAUTIONS AND INSTRUCTIONS PROVIDED WITH THIS HEATER CAN RESULT IN DEATH, SERIOUS BODILY INJURY AND PROPERTY LOSS OR DAMAGE FROM HAZARDS OF FIRE, EXPLOSION, BURN, ASPHYXIATION, CARBON MONOXIDE POISONING AND/OR ELECTRICAL SHOCK.

*Id.* The above hangtag information is presented as follows:



*See* ECF No. 39-16.

It is undisputed that McCullough had removed this hangtag before the Decedent's use of the Subject Heater on December 27, 2022. ECF No. 39-1 at 39:1–14. The hangtag itself does not instruct the owner not to remove the hangtag. ECF No. 39-16. It is undisputed that prior to his injuries Decedent did not see any warnings, instructions, hangtag, or packaging that accompanied the Subject Heater other than what was stamped on the heat shield of the product. ECF No. 39-1 at 39:1–14, 41:5–22, 83:1–84:20.

## LEGAL STANDARD UNDER *DAUBERT*

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, provides the basic analytical framework for determining the admissibility of expert testimony. 509 U.S. 579 (1993). Under *Daubert*, the court acts as a "gatekeeper" by ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Doe by Watson v. Russell Cty. Sch. Bd.*, 292 F. Supp. 3d 690, 717 (W.D. Va. 2018) (citing *Daubert*, 509 U.S. at 589). The trial judge's gatekeeping obligation applies not only to testimony based on scientific knowledge but also to testimony based on technical and other specialized knowledge. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

The trial court's inquiry into admissibility is a flexible one. *Id.* at 150. The court's analysis will depend on "the nature of the issue, the expert's particular expertise, and the subject of [her] testimony." *Id.* at 138. More generally, cases after *Daubert* have shown that "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 (advisory committee's note to 2000 amendment).

The principles of *Daubert* and its progeny are reflected in the Federal Rules of Evidence, which allow expert evidence under certain circumstances:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)    the testimony is based on sufficient facts or data;
>
> (c)    the testimony is the product of reliable principles and methods; and
>
> (d)    the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. As stated by the advisory committee:

> When facts are in dispute, experts sometimes reach different conclusions based on

6

competing versions of the facts. The emphasis in the amendment on "sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.

Fed. R. Evid. 702 (advisory committee's note to 2000 amendment).

Recognizing that case law after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule, the advisory committee states "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Id.* (quoting *United States v. 14.38 Acres*, 80 F.3d 1074, 1078 (5th Cir. 1996)). As noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 596.

"Testimony from an expert is presumed to be helpful unless it concerns matters within the everyday knowledge and experience of a lay juror." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993). Issues associated with the admission of expert testimony may arise when "the evaluation of the commonplace by an expert witness might supplant a jury's independent exercise of common sense." *Id.* (internal quotation marks and citation omitted). Expert testimony is not helpful if the untrained layman would be qualified to intelligently determine the particular issue without the aid of an expert. Fed. R. Evid. 702 (advisory committee note to 1972 proposed rules).

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment bears the initial

burden of demonstrating to the court that there is no genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party meets this burden, the nonmoving party must then set forth specific facts to show there is a genuine issue for trial. *See* Fed. R. Civ. P. 56; *see also Celotex Corp.*, 477 U.S. at 323. To avoid summary judgment, the nonmoving party may not rest upon mere allegations or denials stated in the pleadings. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, it cannot "create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## DISCUSSION

I.     Defendant's *Daubert* Motion to Exclude Grugle

The court first addresses Defendant's *Daubert* motion to exclude Plaintiff's expert Grugle. Defendant argues that Grugle is not qualified to render opinions about the Subject Heater's warnings, nor is her opinion reliable or relevant. ECF No. 31-1 at 12–23. The court agrees Grugle's opinion must be excluded.

A.     Grugle's Qualifications

"As a threshold matter, before a witness may be permitted to provide expert testimony, he must be qualified as an expert." *Est. of Ravenell v. Pugmill Sys., Inc.*, C.A. No. 2:13-00815- PMD, 2014 WL 7146848, at *4 (D.S.C. Dec. 15, 2014) (citation omitted).

Plaintiff identified Nancy Grugle, Ph.D., CHFP, as an expert witness "to determine if the warning system provided by Enerco was defective." ECF No. 31-8 at 1–2; ECF No. 31-9 ("Grugle

Report"); ECF No. 38-20 at 44:8–10, 45:9–12. During argument, Plaintiff's counsel stressed this was not a warnings defect case, but, nevertheless, Plaintiff sought to introduce Grugle's testimony to opine on "warning adequacy as it relates to design . . . ." ECF No. 55 at 81:5. Grugle has a Ph.D. in Industrial and Systems Engineering (Human Factors) from Virginia Polytechnic Institute and State University and is a Certified Human Factors Professional. ECF No. 31-11. She currently works for Evidence Solutions, Inc., and one hundred percent of her work is for litigation. ECF No. 38-20 at 78:7–14. She lists her specialties as "Drowsy Driving, Distracted Driving, Looming, Driver Actions, Fatigue, Sleep Deprivation and Shift Work, Work Zone Safety, Product User-Interface Design, [and] Premises Safety." ECF No. 31-11 at 1; ECF No. 38-20 at 30:25–31:8 (testifying most of her work relates to transportation, e.g., distracted driving and other causes of collisions). She has authored or coauthored several publications, the vast majority of which relate to distracted driving and other issues related to sleep deprivation. ECF No. 31-11 at 3–5. She has no publications related to product warnings. ECF No. 38-20 at 30:18–23. And she has never attended any seminars on drafting warnings. *Id.* at 82:1–4.

Grugle's only experience with preparing product warnings came from her work at Lockheed Martin. *Id.* at 87:5–12. There, she developed a user manual for commercial energy management software and warnings for military equipment. *Id.* at 160:14–161:17. Grugle has never designed a warning for a propane-burning or heat-producing appliance. *Id.* at 32:9–18.[2] She likewise has never previously offered an opinion related to tanktop propane radiant heaters or worked on other cases involving any kind of propane heater. *Id.* at 7:19–8:2. She has never worked

---

[2] Grugle asserts, however, in her declaration submitted in opposition to Defendant's motion to exclude, that at Lockheed Martin, she "designed product warnings and instructions for systems and products that were more complex than a tank top propane heater and presented hazards that were equally, if not more, dangerous than a tank top propane heater." ECF No. 38-24 ¶ 7.

with any standards relevant to propane-burning heaters of any type. *Id.* at 9:5–12. Moreover, she has never provided opinions in any other case involving clearance to combustibles. *Id.* at 85:25–86:4. For her work in this case, she did not review the designs or warnings for competitive heating products although she did review, but not rely, on a manual for an outdoor propane heater and a Mr. Heater owner's manual for a gas-fired room heater, both containing a warning related to clothing ignition. *Id.* at 35:7–11, 86:21–24, 89:1–24.

Grugle's work in this case involved two conference calls with Plaintiff's counsel, one of which included Plaintiff's design expert Rondinone. *Id.* at 10:17–11:21. As testified by Grugle:

> The video showed a piece of fabric being exposed to the Mr. Heater propane tank-top heater with the existing grille or grate. And then it also showed video of fabric being exposed to Mr. Rondinone's guard, proposed guard, for the Mr. Heater propane tank-top heater.

*Id.* at 20:11–16. Other than watching the video, Grugle has not seen in person, operated, stood by, nor heard the heater in operation. *Id.* at 69:14–70:2, 106:5–15, 108:8–12.

The Subject Heater is certified to ANSI Z83.7—Gas-Fired Construction Heaters. Grugle reviewed ANSI Z83.7, but she did not analyze what the standard requires for the construction of the heater. *Id.* at 50:8–20. In other words, she did not compare what the standard requires to what Defendant produced. *Id.* She does not opine whether the Subject Heater meets the standard. *Id.* at 50:21–25. Furthermore, she is not aware of the standard's certification process, including that part of the standard as it relates to warnings and instructions. *Id.* at 123:23–124:11. Therefore, she does not know what the standard requires for warnings and instructions. *Id.*[3]

Courts facing a similar situation—an undisputed expert without expertise in the particular

---

[3] Plaintiff argues that the ANSI Z83.7 standard did not impact Grugle's analysis in that "[t]he existence of a minimum engineering standards with minimal markings requirements does not alter that analysis." ECF No. 38 at 20. Plaintiff does not dispute, however, that Grugle did not rely on or incorporate the standard in reaching her conclusions.

area at issue in the case—have excluded experts as unqualified. *See, e.g.*, *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 392 (D. Md. 2001) (collecting cases in which mechanical and civil engineers were excluded from testifying based on their lack of qualifications on particular subject matters); *see also Estate of Ravenell*, 2014 WL 7146848, at *6 ("Mr. Fournier's status as a licensed Professional Engineer is not, in and of itself, sufficient to qualify him as an expert in this case.") (citing *Wright v. Case Corp.*, CIV.A. 1:03-DV-1618-JEC, 2006 WL 278384, at *3 (N.D. Ga. Feb. 1, 2006) (collecting cases in which courts refused to qualify engineers as expert witnesses without relevant experience and expertise)); *Thompson v. Queen City, Inc.*, CIV.A. 2:00-2359-18-DCN, 2002 WL 32345733, at *1 (D.S.C. July 9, 2002) ("Courts have found that a proffered expert who is an engineer is not necessarily qualified to testify as an expert on any issue within the vast field of engineering.").[4]

Here, Grugle only has experience designing warnings for military equipment and has no experience with propane radiant heaters. More importantly, there is no indication that Grugle generally familiarized herself with propane radiant heaters' operation or operating characteristics.

---

[4] Plaintiff's citation to *Burns v. Coty, Inc.*, No. 1:15-CV-5060-TLW, 2018 WL 3575930, at *4 (D.S.C. May 16, 2018), does not help Plaintiff where, in that case, the court qualified the plaintiff's expert, noting as follows:

> In its briefing, Coty does not cite to any case law that requires an expert be specialized in one specific type of product in order to be a "qualified" expert witness. Further, Coty does not cite to any case law that precludes admitting an expert in a cosmetics case because he may have handled a significant amount of non-cosmetic cases in the past. Further, Burns has presented sufficient evidence that Kitzes has significant and broad experience with safety standards and warnings, has published articles that have been peer reviewed, and has knowledge and experience with product safety and testifying regarding the sufficiency of warnings in cosmetic and non-cosmetic cases. For these reasons, the Court finds that Kitzes is qualified to testify as an expert pursuant to Rule 702.

*Id.*

For example, she did not obtain an exemplar of the heater model at issue or examine exemplars of any other type of tank-top heaters. ECF No. 38-20 at 34:22–35:6.

Plaintiff argues otherwise, noting Defendant's human factors expert testified that "[w]arnings are very transportable" and that "[i]t's not unique to a specific product type or sector." ECF No. 38-17 at 129:13–15. However, the expert's full answer in context is as follows in explaining that "warnings are very transportable":

Q.    Have you written instructions or warnings for any product that's being manufactured?

A.    Yes, or at least advised on, provided—you know, it kind of runs the gamut of starting from scratch to having a pretty complete owner's manual and stuff that you're reviewing. But I've had a lot of different non-litigation projects where I've advised clients on that.

Q.    What products have you written warnings for?

A.    I am certain that I could not remember all of them at this point in my career. It really runs the gamut. Warnings is [sic] very transportable. It's not unique to a specific product type or sector, but I have worked on things such as children's toys. I've worked on things such as products that we use, as parents, with our children, so kind of juvenile product categories, like strollers and things like that. Automobiles. I've worked on various types of components in the automotive industry, from aftermarket kind of trailer hitches and things like that to towing type equipment. All different kinds of home appliances and—and a few home healthcare devices. Things such as—that have had chemical hazards associated with them, like flammability and kind of hazardous properties. I've worked on projects with heavy construction equipment, lots of different power equipment and non-powered hand tools as well. So I've worked with a number of trade associations on kind of various components of warnings and elements of warnings and requirements for their standards. So it really runs the gamut from kind of household products to heavy, large mobile equipment used to tear down buildings.

ECF No. 38-17 at 129:1–130:10.[5]

---

[5] There is no indication that Grugle's experience writing warnings is comparable to Defendant's expert.

Based on the dearth of Grugle's experience in even tangential fields, the court has serious reservations that she is qualified to give expert testimony on the inadequacy of the warning at issue in this case pursuant to Rule 702. But as explained below, even assuming she is qualified, the court finds that her warnings opinions are not reliable and will not assist the trier of fact.

B.      Reliability of Grugle's Opinion

Grugle's Report contains her opinion that Defendant failed to do clothing ignition testing and failed to advise users as to the nature and scope of the hazard or provide instructions on how to avoid the hazard.[6] ECF No. 31-9 at 12–13, ECF No. 38-20 at 100:8–13. In other words, Defendant should have done more than just warned users to keep clothing 30 inches from the Subject Heater; it should have included an explicit clothing ignition warning. ECF No. 38-20 at 120:4–10, 130:16–19.

> As stated in her report, Defendant provided the following warning:
>
> To avoid injury or property damage never allow clothing, tents, or other combustible materials within 30" of the face of the heater. This heater must be located at least 24" above the floor level when in use. Never operate the heater when sleeping.

ECF No. 31-9 at 18. Notwithstanding, this warning is inadequate according to Grugle as follows:

> None of the warnings on the hangtag or in the manual explicitly identify the clothing ignition hazard as it relates to people standing/walking near the heater (vs. static combustibles); none of the warnings explicitly state the consequences of encountering the clothing ignition hazard; and none of the warnings explicitly instruct users how to avoid the clothing ignition hazard. Specifically, Enerco failed to provide a warning that explicitly informed users that clothing can ignite from the heat produced by the heater if they get within a specific distance for a specific amount of time (and even if their clothing never comes into contact with the heater

---

[6] Grugle is not critical of the size of the hangtag or the font used. ECF No. 38-20 at 46:3–10. Moreover, she does not know whether the standard to which the Subject Heater is certified has requirements related to the hangtag material and has no opinion related to the way the hangtag was attached to the Subject Heater. *Id.* at 93:24–94:2, 95:1–14. Likewise, she is not critical of the format of the warnings—she is only critical of the content as it relates to the clothing ignition hazard. *Id.* at 46:14–22, 47:8–17.

or the heater grate/grill). In addition, Enerco failed to instruct users how to avoid the clothing ignition hazard by keeping a specific distance away from the heater or by not getting within a specific distance for more than a specific amount of time. Lastly, Enerco failed to inform users of the consequences of encountering the clothing ignition hazard (e.g., burns, serious injury, and death).

*Id.* at 18–19.

However, the court fails to discern the scientific basis for Grugle's conclusion. In her own words, Grugle defines "human factors" as "the scientific study of how people interact with technology and their environment." *Id.* at 21:15–19. But she seeks to render an opinion about the deficiencies in the Subject Heater's warnings without having ever seen the heater in person, operated it, or interacted with it. *Id.* at 17:13–17, 19:12–18, 20:20–24. She saw an unmodified heater and a modified heater in operation during a videoconference call. *Id.* at 20:4–16. However, other than that videoconference,[7] she admittedly has no other experience or knowledge base from which to understand the operating characteristics of the Subject Heater. *Id.* at 20:9–24. In addition, she did not conduct any testing to evaluate user perceptions of the heater or even attempt to offer an alternative warning because, as she testified, she has no opinions about causation in this case. *Id.* at 23:2–6, 24:9–25:23, 85:3–10, 131:20–132:1. Relatedly, she cannot identify an example of a safer alternative warning that she would consider adequate. *Id.* at 132:12–19.[8]

---

[7] Grugle, in her declaration submitted in opposition to Defendant's motion to exclude, argues that the videoconference was significant in that she watched a video of the operation of the MH15T as well as a video of the operation of the MH15T with Rondinone's alternative guard design, to "observe the operation of the heater—including the color of its heating element, the location of its guard, any sounds, etc. Most importantly, it was so Dr. Grugle could understand the hazard—that the heater can readily ignite clothing that comes into proximity of the heater, and that the hazard could be mitigated by an alternative guard design." ECF No. 38 at 21, ECF No. 38-24, *see also* ECF No. 38-20 at 19:19–20:16. However, as noted by Defendant, Grugle references Rondinone only one time in a footnote in her 22-page report, ECF No. 31-9, and Rondinone testified they only spoke for a total of 5 to 15 minutes. ECF No. 30-12 at 13:2–9.

[8] Indeed, in her Report she states, "warnings do not protect users who inadvertently or unintentionally come into contact with the hazard." ECF No. 31-9 at 15.

Having never operated or interacted with the Subject Heater, or any propane radiant heater, Grugle has never felt the heat generated while the heater is operating. *See id.* at 67:4–11. As she watched the heater via videoconference, she admittedly could not determine how close individuals could get to the heater before their skin would start to feel uncomfortable. *Id.* at 67:12–15. No one has provided her any information regarding how far an individual can stand from the heater and feel the infrared heat. *Id.* at 19:5–11. She testified she does not know what kind of heat one would feel if wearing cotton pants and standing six inches (or any distance) away from the heater. *Id.* at 20:25–21:4.

Plaintiff argues that "[o]ne is not required to stand next to the heater to understand it gets hot"—in other words "[i]t's a heater," ECF No. 38 at 21, and the court agrees. However, Grugle was required to base her opinions that Defendant's warnings were inadequate on *some* basis, such as physical interaction with the Subject Heater, or otherwise. *See Hickerson v. Yamaha Motor Corp.*, 882 F.3d 476, 479 (4th Cir. 2018) ("But Dr. Kasbekar's inadequate warning opinion was not supported by studies, research, or other scientific basis of verification necessary to establish reliability for *Daubert* purposes.").

Here, Grugle did not review any photographs from this case. ECF No. 38-20 at 38:8–16. She did not talk to any fact witnesses, including McCullough, the owner of the Subject Heater. *Id.* at 11:4–12:3. She was not provided Decedent's medical records showing the location of his burns. *Id.* at 91:18–21.

While Grugle criticizes Defendant for failing to conduct clothing ignition testing, she has no knowledge of the specifics of clothing ignition testing. *Id.* at 92:2–7. Moreover, she is not familiar with the standard to which the heater was certified, which does not require clothing ignition testing. *Id.* at 50:8–13, *see also* ECF No. 31-2 ¶18. In addition, she has never worked with

15

any standards that involve clothing ignition tests. ECF No. 38-20 at 71:20–23. She knows nothing about how Decedent's clothes ignited. *Id.* at 93:7–8. She assumes Decedent's clothing would not have caught fire if he had been 30 inches from the heater. *Id.* at 117:16–118:2.[9]

In sum, Grugle opines that Defendant's warning is inadequate but provides no explanation for the basis for her conclusion and offers no alternatives. Grugle did not engage in a reliable methodology in reaching her opinion that Defendant should have included an express warning about the clothing ignition hazard, and her opinions are not based on research conducted independent of this litigation. *Wehling v. Sandoz Pharms. Corp.*, No. 97-2212, 1998 WL 546097, at *3 (4th Cir. 1998) ("Another significant fact weighing against admitting the testimony is where, as here, the expert developed his opinions expressly for the purposes of testifying.").

Grugle's opinions appear based on her own "say so" without supporting evidence or proof. "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 137 (1997); *see also Graves v. Mazda Motor Corp.*, 675 F. Supp. 2d 1082, 1103 (W.D. Okla. 2009), aff'd, 405 F. App'x 296 (10th Cir. 2010) ("Although human factors engineering is a legitimate discipline, in a forensic setting, the application of human factors principles can be highly subjective and thus conveniently malleable. Human factors testimony which is proffered without a showing of objective support (testing or, at least, independent support in relevant literature) invites close scrutiny to determine whether the expert's work is an exercise in facile advocacy (*e.g.* the 'ipse dixit of the expert').").

---

[9] Grugle emphasizes the apparent inconsistency of Defendant's warning people to maintain a 30-inch distance from the product when they also must turn the heater on and off. *See, e.g.*, ECF No. 31-9 at 19. However, there is no indication in this case that Decedent was attempting to turn on or off the Subject Heater, nor does Grugle explain what warning would be sufficient and would account for turning the product on and off.

16

Lacking any other basis for their admission, the court excludes Grugle's opinions. *See Lackey v. Robert Bosch Tool Corp.*, No. CV 16-29-ART, 2017 WL 129891, at *7 (E.D. Ky. Jan. 12, 2017) (finding that because plaintiff "has not bridged the gap between Dr. Grugle's general knowledge of her specific conclusions, she may not testify as to her evaluation of the SkilSaw's safety warnings").[10]

## II. Defendant's Motion for Summary Judgment

Plaintiff asserts products liability claims against Defendant for strict liability, negligence, and breach of warranty. Under South Carolina law, these are alternative theories of relief in a products liability action. *See Talkington v. Atria Reclamelucifers Fabrieken BV*, 152 F.3d 254, 261 (4th Cir. 1998). In South Carolina, "there are three defects a plaintiff in a products liability lawsuit can allege: 1) a manufacturing defect, 2) a warning defect, and 3) a design defect." *Watson v. Ford Motor Co.*, 699 S.E.2d 169, 174 (S.C. 2010). To raise a design defect claim, the plaintiff must allege that "the product at issue was defectively designed, thus causing an entire line of products to be unreasonably dangerous." *Id.* Here, Plaintiff asserts only a design defect claim, not a warning defect claim. *See, e.g.*, ECF No. 39 at 17, 21. Nevertheless, for the reasons discussed below, the adequacy of the warnings for the Subject Heater is integral to the court's analysis of whether Plaintiff's design defect claim survives summary judgment.[11]

Defendant argues that, consistent with state law, claims of defective design are defeated

---

[10] Given the determination above, the court need not address Defendant's additional argument that Grugle's opinion that the clothing ignition hazard is not open and obvious should be excluded and that all of her opinions are irrelevant where "the warnings were not available to Berger through no fault of Enerco." *See* ECF No. 31-1 at 22–23.

[11] In his brief and during argument, Plaintiff repeatedly stressed that this a design defect, not a warnings defect claim. That point is both well made and well taken, but, ultimately, South Carolina law inextricably intertwines the design defect analysis and the warning adequacy issue.

when product warnings are deemed legally adequate. ECF No. 30-1 at 20–21. Plaintiff disagrees. ECF No. 39 at 22–26. But this issue has been directly addressed by the Fourth Circuit in *Hickerson v. Yamaha Motor Corp.*, 882 F.3d 476, 483 (4th Cir. 2018). *Hickerson* is both binding and instructive. *See Fed. Deposit Ins. Corp. v. Fagan*, 459 F. Supp. 933, 934 (D.S.C. 1978) ("[T]his court is bound by the decisions of the Court of Appeals of this Circuit until such decisions are changed.").

Like this case, *Hickerson* was a products liability case out of South Carolina that came to federal court in diversity. 882 F.3d at 483. *Hickerson* concerned both design and warning defect claims for a personal watercraft. The operative question for the Fourth Circuit was "whether claims of defective designed are defeated when product warnings are deemed legally inadequate" under South Carolina law. *Id.* As part of that inquiry, the Fourth Circuit examined the South Carolina Defective Products Act, S.C. Code Ann. § 15-73-10, *et seq.*, noting South Carolina has codified § 402A of the Restatement (Second) of Torts, and the South Carolina General Assembly has also adopted the comments as an expression of its legislative intent for the Act. *Hickerson*, 882 F.3d at 483 (citing S.C. Code § 15-73-30 ("Comments to § 402A of the Restatement of Torts, Second, are incorporated herein by reference thereto as the legislative intent of this chapter."); *Aldana v. RJ Reynolds Tobacco Co.*, No. 2:06-3366-CWH, 2008 WL 1883404, at *1 (D.S.C. Apr. 25, 2008)).

The parties in *Hickerson* disputed the meaning and applicability of Comment j to § 402A of the Restatement (Second) of Torts that provides in pertinent part as follows:

> Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous.

Restatement (Second) of Torts § 402A cmt. j (Am. Law Inst. 1965).

18

Ultimately, the Fourth Circuit rejected Hickerson's design defect claim based on the applicability of Comment j. The court further rejected any argument as to Comment j's ambiguity and any argument that Comment j is not followed by the applicable courts:

> On its face, Comment j provides that an adequate *warning* makes a product "safe for use if [the warning] is followed." § 402A cmt. j. A product seller who puts such a *warning* on his product is entitled to "reasonably assume that [the warning] will be read and heeded." *Id.* The *warning* also makes the product "not in defective condition, nor . . . unreasonably dangerous." *Id.* The application of Comment j to design defect claims thus relies entirely upon the adequacy of a product warning.
>
> Consistent with Comment j's text, the South Carolina Court of Appeals has repeatedly applied its plain language to confirm that an adequate warning operates to "cure" a product's alleged design defects. *E.g., Curcio v. Caterpillar, Inc.*, 344 S.C. 266, 543 S.E.2d 264, 269 (Ct. App. 2001) ("[A] product is not unreasonably dangerous if accompanied by adequate warnings that, if followed, make the product safe for use."), rev'd on other grounds, 355 S.C. 316, 585 S.E.2d 272 (2003); *Allen*, 505 S.E.2d at 359 (stating a manufacturer need not "refine a product which is made safe for use by an adequate warning so that the product does not need a warning to be safe"); *Anderson v. Green Bull, Inc.*, 322 S.C. 268, 471 S.E.2d 708, 710 (Ct. App. 1996) ("A product bearing a warning that the product is safe for use if the user follows the warning is neither defective nor unreasonably dangerous; therefore, the seller is not liable for any injuries caused by the use of the product if the user ignores the warning."); *Claytor v. Gen. Motors Corp.*, 277 S.C. 259, 286 S.E.2d 129, 132 (Ct. App. 1982) ("If [inherently dangerous products] are properly prepared, manufactured, packaged and accompanied with adequate warnings and instructions, they cannot be said to be defective.").
>
> This Court has likewise understood Comment j to shield a manufacturer from liability for product defects if the product contains an adequate warning. *See Phelan v. Synthes (U.S.A.)*, 35 F. App'x 102, 109–10 (4th Cir. 2002) (per curiam) (citing *Allen* and *Anderson* for the principle that a product with an adequate warning is not defective or unreasonably dangerous). The South Carolina district courts have ruled similarly. *Priester v. Futuramic Tool & Eng'g Co.*, No. 2:14-cv-01108-DCN, 2017 WL 1135134, at *6 (D.S.C. Mar. 27, 2017); *Alford v. Lowe's Home Ctrs., Inc.*, No. 8:13-1787-BHH, 2014 WL 5305825, at *2 (D.S.C. Oct. 15, 2014) (recognizing the principle as articulated in *Anderson* and *Claytor*); *Aldana*, 2008 WL 1883404, at *1 (rejecting the plaintiff's theory "that an adequate warning does not preclude liability for a defective design claim"). *But see Marshall v. Lowe's Home Ctrs.*, LLC, No. 4:14-cv-04585-RBH, 2016 WL 4208090, at *20 & n.29 (D.S.C. Aug. 10, 2016) ("Comment j and the South Carolina cases interpreting it simply recognize an adequate warning may preclude liability for a defective design claim.").

Although the Supreme Court of South Carolina has not applied Comment j to the

precise issue before us, the South Carolina Court of Appeals has consistently applied Comment j in similar South Carolina products liability cases. When the highest court of a state has not indicated how it would decide an issue, we follow the law of intermediate state courts, like the South Carolina Court of Appeals, absent "persuasive data" that the highest court would rule differently. [*United States v.*] *Little*, 52 F.3d [495,] 498 [(4th Cir. 1995)].

*Hickerson*, 882 F.3d at 483–84.

Plaintiff makes several arguments disputing that an adequate warning can cure an alleged designed defect under South Carolina law. The court addresses each argument in turn.

First, Plaintiff argues "[a]s a practical matter, the notion that a defective product design can be immunized by a written warning creates not only a dangerous incentive, but it would logically chill innovation in risk assessment and product design." ECF No. 39 at 23. However, the Fourth Circuit in *Hickerson* rejected this argument. *See Hickerson*, 882 F.3d at 485 ("Nevertheless, Hickerson urges us to rewrite the text of Comment j despite its lack of facial ambiguity. She would have us ignore the uniform decisions of the South Carolina Court of Appeals based on her counsel's academic theories and policy arguments.").

Plaintiff next urges that there is no "reasonable indication" that the Supreme Court of South Carolina would adopt the rule articulated by the Fourth Circuit, citing case law where, Plaintiff argues, the South Carolina Supreme Court chose the Restatement (Third) of Torts: Products Liability § 2(b) (1998) over the Restatement (Second) of Torts § 402A in products liability cases. ECF No. 39 at 23 (citing *Branham v. Ford Motor Co.*, 701 S.E.2d 5, 14 (S.C. 2010)).

In *Branham*, the South Carolina Supreme Court held as follows:

In 1974, our Legislature adopted the Restatement (Second) of Torts § 402A (1965), and identified its comments as legislative intent. S.C. Code Ann. §§ 15-73-10–30 (2005). The comments in section 402A are pointed to as the basis for the consumer expectations test. Since the adoption of section 402A, the American Law Institute published the Restatement (Third) of Torts: Products Liability (1998). The third edition effectively moved away from the consumer expectations test for design defects, and towards a risk-utility test . . . .

20

> We believe that in design defect cases the risk-utility test provides the best means for analyzing whether a product is designed defectively. Unlike the consumer expectations test, the focus of a risk-utility test centers upon the alleged defectively designed product. The risk-utility test provides objective factors for a trier of fact to analyze when presented with a challenge to a manufacturer's design. Conversely, we find the consumer expectations test and its focus on the consumer ill-suited to determine whether a product's design is unreasonably dangerous . . . .

> We believe the rule we announce today in design defect cases adheres to the approach the trial and appellate courts in this state have been following.

*Branham*, 701 S.E.2d at 14–15.

Plaintiff argues, citing case law, that after *Branham*, the risk-utility test under the Restatement (Third) of Torts § 2(b) (1998) is the exclusive test for design defect claims in South Carolina, ECF No. 39 at 24. Plaintiff then turns to the Restatement (Third) of Torts § 2(b) comments asserting that the South Carolina Supreme Court, in following this guidance, would not hold that an adequate product warning would "cure" an unreasonably dangerous design. *Id.* at 25.[12] Plaintiff further asks this court to certify the question of the appropriate law to the South Carolina Supreme Cout "[t]o eliminate any doubt. . . ." *Id.* at 26; *see also* ECF No. 37 (Plaintiff's motion to certify).

But the court is not convinced. The central issue in *Branham* was whether the consumer expectations test, commonly applied in manufacturing defect claims, was a suitable test for design defect claims. The court held that it was not, and formally "announced" the adoption of the risk-

---

[12] As stated in the relevant comment:

> In general, when a safer design can reasonably be implemented and risks can reasonably be designed out of a product, adoption of the safer design is required over a warning that leaves a significant residuum of such risks . . . . Warnings are not, however, a substitute for the provision of a reasonably safe design.

Restatement (Third) of Torts § 2(b), cmt. l (1998).

utility test. *Branham*, 701 S.E.2d at 15. Plaintiff here argues this was a novel ruling that supersedes the South Carolina General Assembly's codification of § 402A of the Restatement (Second) and its comments as its legislative intent. However, as quoted above, the court held that the risk-utility test had been recognized well before *Branham*, further stating as follows:

> We believe the rule we announce today in design defect cases adheres to the approach the trial and appellate courts in this state have been following. In reported design defect cases, our trial and appellate courts have placed their imprimatur on the importance of showing a feasible alternative design. *See Claytor v. Gen. Motors Corp.*, 277 S.C. 259, 265, 286 S.E.2d 129, 132 (1982) (adopting the risk-utility test); *Kennedy v. Custom Ice Equip. Co.*, 271 S.C. 171, 176, 246 S.E.2d 176, 178 (1978) (affirming verdict in favor of plaintiff by noting that plaintiff presented evidence of a design alternative); *Mickle v. Blackmon*, 252 S.C. 202, 234–35, 166 S.E.2d 173, 187–88 (1969) (discussing a manufacturer's decision to use one type of inferior material as a component part one year, but a superior material the following year—that is, a design alternative); *Bragg v. Hi-Ranger, Inc.*, 319 S.C. 531, 546, 462 S.E.2d 321, 330 (Ct. App.1995) (affirming defense verdict and noting that plaintiff failed to present evidence of a feasible alternative design); *Sunvillas Homeowners Ass'n v. Square D Co.*, 301 S.C. 330, 334, 391 S.E.2d 868, 870 (Ct.App.1990) (affirming a defense directed verdict and noting that plaintiff's expert failed to discuss design alternatives); *Gasque v. Heublein, Inc.*, 281 S.C. 278, 283, 315 S.E.2d 556, 559 (Ct.App.1984) (affirming a plaintiff's verdict and noting in detail existence of alternative design evidence).

*Id.* at 15.

As stated in *Branham*, the risk-utility test was recognized in *Claytor v. Gen. Motors*, an opinion delivered sixteen years prior to promulgation of the Restatement (Third) of Torts § 2 (1998) and its comment l. *Branham* did not introduce a new legal principle; it reaffirmed an existing one.[13]

Moreover, *Branham* did not render § 402A of Restatement (Second) and its comments inapplicable in design defect cases. Neither did *Branham* adopt comment 1 to Restatement (Third)

---

[13] Notably, the *Claytor* court recognized that a product "properly prepared, manufactured, *packaged and accompanied with adequate warnings and instructions . . .* cannot be said to be defective." 286 S.E.2d at 132 (emphasis added).

§ 2, or even discuss the same. Defendant argues, and Plaintiff does not dispute, that neither the South Carolina General Assembly nor any appellate court in this state has adopted the comments of Restatement (Third) § 2. Instead, the Defective Products Act continues to incorporate the comments to § 402A of Restatement (Second) with no legislative amendments following *Branham* or the Fourth Circuit's application of South Carolina law in *Hickerson*, an opinion issued eight years after *Branham*. *See also Grubbs v. Wal-Mart Stores, Inc.*, 514 F. Supp. 3d 820, 826 (D.S.C. 2021) (rejecting the argument that, based on *Branham*, Comment j did not apply and noting, "[a]s demonstrated by *Lawing v. Univar, USA, Inc.*, 415 S.C. 209, 781 S.E.2d 548 (S.C. 2015), the Supreme Court of South Carolina continues to apply the Restatement (Second) of Torts and its comments to products liability claims").

Put simply, *Hickerson* directly addresses this exact issue and binds this court. And Plaintiff has failed to submit any evidence or argument demonstrating a change to South Carolina law since that decision. *See Hickerson*, 882 F.3d at 485 ("She has presented no 'persuasive data' that the Supreme Court of South Carolina would apply Comment j differently, yet she essentially asks us to do what that court has not done—overrule the South Carolina Court of Appeals on a question of South Carolina law. This we cannot do.").[14]

As held by the Fourth Circuit, South Carolina law "allows adequate product warnings to 'cure' alleged design defects." *Hickerson*, 882 F.3d at 484. Thus, the court need not address whether a design defect existed in this case, as Plaintiff has failed to offer admissible evidence—

---

[14] For the same reasons articulated above, the court denies Plaintiff's motion for certification where certification of a question of state law to that state's highest court is appropriate when the federal court is "required to address a *novel* issue of [state] law which is determinative in the case before it." *Grattan v. Bd. of Sch. Comm'rs of Baltimore City*, 805 F.2d 1160, 1164 (4th Cir. 1986) (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)) (emphasis added); *see also, e.g.*, *New ex rel. D.J.M. v. Astrue*, 374 Fed. Appx. 416, 421 (4th Cir. 2010) (holding "only if the available state law is clearly insufficient should the court certify the issue to the state court") (citation omitted)).

whether through expert testimony or otherwise—challenging the adequacy of the product warnings. Furthermore, Plaintiff's own experts concede that, had Decedent followed the warnings provided, the tragic accident in which his clothing caught fire would not have occurred. *See McRee v. Dick's Sporting Goods, Inc.,* No. CV 9:15-4579-RMG, 2017 WL 5201525, at *2 (D.S.C. Nov. 9, 2017) ("[T]here can be no design defect claim under any theory where a product is 'accompanied by adequate warnings that, if followed, make the product safe for use.'") (citing *Hickerson v. Yamaha Motor Corp., U.S.A.*, No. 8:13-CV-02311-JMC, 2016 WL 4367141, at *5 (D.S.C. Aug. 16, 2016)); *see also Hickerson*, 882 F.3d at 484–85 (where there is "no admissible evidence that [the product's warnings] were legal inadequate[,]" those warnings are deemed adequate as a matter of law and, even assuming a defective design, Comment j allows the manufacturer "to avoid liability for any design defects because [the product's] warning were legally adequate such that, 'if [they were] followed, [the product] was not in defective condition, nor [was] it unreasonable dangerous'").[15]

---

[15] Rondinone opined that Decedent was within 3–4 inches or less from the Subject Heater, much closer than the 30 inches contained in relevant warnings. ECF 30-12 at 19:20–24. Rondinone further testified that "[a]t 30 inches, I do not believe you will get ignition of clothing under any circumstance, that I can perceive." *Id.* at 31:12–14. Likewise, Grugle assumes Decedent's clothing would not have caught on fire if he had been 30 inches from the Subject Heater based on Defendant's warnings. ECF No. 30-11 at 117:16–118:2. Grugle states in her declaration, however, that "Defendant's assertion that the 30-inch clearance to combustibles instruction, if followed, will prevent clothing ignition from occurring is incorrect, unscientific, and unreliable," focusing on how a user would have to violate these instructions to turn the heater on and off. ECF No. 38-24 ¶ 4. Yet Grugle does not explain under what circumstances, in this specific case, Decedent would have been harmed if he had followed these instructions. *See id.*

## CONCLUSION

For the above reasons, Defendant's motion to exclude Grugle, ECF No. 31, is **GRANTED**, Defendant's motion for summary judgment, ECF No. 30, is **GRANTED**, Plaintiff's motion to certify, ECF No. 37, is **DENIED**, and Defendant's motion to exclude Rondinone, ECF No. 32, is **DENIED AS MOOT**.

IT IS SO ORDERED.

March 25, 2025                                          Sherri A. Lydon
Columbia, South Carolina                     United States District Judge